UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARON C.,

                    Plaintiff,

          v.                                                          **DECISION AND ORDER**
                                                                      19-CV-1259S
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____


          1.      Plaintiff Sharon C.[1] brings this action pursuant to the Social Security Act

("the Act"), seeking review of the final decision of the Commissioner of Social Security

that denied her applications for disability insurance benefits and supplemental security

income under Titles II and XVI of the Act.  (Docket No. 1.) This Court has jurisdiction over

this action under 42 U.S.C. § 405(g).

          2.      Plaintiff protectively filed her applications for benefits on December 1, 2015.

(R.[2] at 96.) Plaintiff alleged disability beginning on August 19, 2012, due to depression,

anxiety, and impairment of the spine. (Id.) Plaintiff's application was denied. Plaintiff

thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Maria

Herrero-Jaarsma held a hearing on May 24, 2018, at which Plaintiff, represented by her

attorney, appeared and testified. (R. at 44-92.) Vocational Expert Lanell Hall also

_____

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from
the Committee on Court Administration and Case Management of the Judicial Conference of the United
States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

appeared and testified by telephone. At the time of the hearing, Plaintiff was 34 years old, with a college degree and prior work experience as a baker, overnight stocker, and sales associate. (R. at 54, 64, 65.)

3.     The ALJ considered the case de novo and, on July 24, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 24-37.) On July 19, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on, challenging the Commissioner's final decision.[3]

4.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 14.)  Plaintiff filed a response on August 14, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.     A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

_____

[3] The ALJ's July 24, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

> mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that, although Plaintiff engaged in substantial gainful activity during the fourth quarter of 2016 and the first quarter of 2017, there was a continuous 12-month period in which she did not engage in substantial gainful activity

after her alleged onset date of August 19, 2012. (R. at 26-27.) At step two, the ALJ found

that Plaintiff has the following severe impairments: lumbar degenerative disc disease;

cervical degenerative disc disease; bipolar disorder, type I; depressive mood disorder;

and anxiety disorder with social anxiety. (R. at 27.)

11.     The ALJ then found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals any of the impairments in

20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526). (Id.)

12.     Next, the ALJ found that Plaintiff has the residual functional capacity

("RFC") to perform light work, except that she can

> Alternate between sitting and standing once every hour for 5
> minutes without increasing time off task; occasional climbing
> of ramps and stairs; occasional balancing on level surfaces;
> occasional stooping (i.e. bending at the waist) and kneeling
> but never crouching (i.e. bending at the knees) and crawling;
> can never tolerate exposure to unprotected heights and
> moving machinery or moving mechanical parts. In addition, is
> able to understand, carry our and remember simple, routine
> and repetitive tasks defined as work that requires doing the
> same tasks everyday with little variation in location, hours or
> tasks. Work in a low stress environment (defined as one with
> no supervisory responsibilities; no independent decision-
> making required except with respect to simple, routine
> decisions; and with few if any, work place changes in work
> routines, processes or settings). Work that involves
> occasional contact and interaction with supervisors and
> coworkers and incidental contact with the public. Work that
> can be performed independently or work that can be
> performed generally isolated from other employees but
> employees can be in the general work area.

(R. at 28-29.)

13.     At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work. (R. at 35.)  At step five, the ALJ found that there is a significant number of

jobs in the national economy that Plaintiff can perform. (R. at 36.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 37.)

14.    Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ improperly gave only partial weight to the opinions in the record and then formulated an RFC based on her own reading of the record. Defendant argues that the ALJ properly performed her statutory role of assessing RFC based on the record as a whole.  For the following reasons, Defendant's arguments are convincing.

15.    An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as ... [the claimant's] residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner.").

16.    When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). "It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'" Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y.2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000)) (alteration added).

17.    An ALJ should also consider "information from 'other sources,' … which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to

work.'" <u>Allen v. Comm'r of Soc. Sec.</u>, 351 F. Supp. 3d 327, 335–36 (W.D.N.Y. 2018). The amount of weight to give the opinions of "other sources" is based in part on "the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." <u>Williams v. Colvin</u>, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

18.     Ultimately, the ALJ is tasked with assigning an RFC that reflects the record as a whole. <u>Johnson v. Colvin</u>, 669 F. App'x 44, 46–47 (2d Cir. 2016). Remand is not warranted when the record contains sufficient other evidence supporting the ALJ's determination and where the ALJ weighs all of that evidence when making his residual functional capacity finding. <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 Fed. App'x. 29, 34 (2d Cir. 2013) (refusing to remand "solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity"); <u>Matta v. Astrue</u>, 508 Fed. App'x. 53, 56 (2d Cir. 2013) (concluding that an ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make [a residual functional capacity] finding that was consistent with the record as a whole").

19.     The record shows that Plaintiff suffered from anxiety, depression, bipolar disorder, and from lower back and neck pain. She was in recovery from addiction during the relevant period. She was hospitalized for a psychotic episode in December 2013, but after that her mental health conditions improved with regular medication management.

20.     Plaintiff treated with psychiatrist Dr. Hak Ko during 2014. On intake, on April 16, 2016, Dr. Ko noted that she was pressured and flighty but not bizarre or disorganized (R. at 383). He diagnosed Plaintiff with a mood disorder, rule out bipolar, and rule out

substance induced mood disorder. He prescribed Seroquel. At a progress note two weeks later, Dr. Ko noted that Plaintiff had improved with Seroquel: she was calmer, not as flighty, and doing better with her mood. (R. at 382.) On August 29, 2014, Plaintiff terminated services.  (R. at 377-81.)

21.     Plaintiff's primary care physician was Dr. Ayesha Butt. Dr. Butt treated Plaintiff for depression and back pain. Her notes reveal that Plaintiff was not always compliant with treatment. On April 23, 2014, Plaintiff could not leave her house due to anxiety, had a new psychiatrist, and was changing her medications. (R. at 417.) On July 5, 2014, Dr. Butt noted that Plaintiff was not taking Seroquel as prescribed. (R. at 412.) On April 13, 2015, Plaintiff had fainted at work. She reported she had stopped all her psychotropic medications. (R. at 408.) On May 4, 2015, Plaintiff had not been taking mental health medications, but was started on Zoloft. (R. at 406). On January 14, 2016, Dr. Butt noted that she had given Plaintiff Zoloft, but Plaintiff had not followed up. (R. at 395.)

22.     Imaging of Plaintiff's cervical and lumbar spine showed a muscle spasm in her cervical spine and degenerative changes in her lumbar spine. (Id.) On June 2, 2015, Dr. Butt observed that Plaintiff's straight leg raise was negative. On September 16, 2015, examination revealed mild back pain (R. at 398-400.) On January 14, 2016, Dr. Butt found mild back pain with full back flexion on examination. (R. at 397.) On April 2, 2018, Dr. Butt noted that she was filling out disability paperwork for Plaintiff (no evidence of which appears in the record). She noted that Plaintiff felt much better and felt her back pain should not be a contraindication to working. (R. at 642.)

23.     Plaintiff also had neurological consultations at Dent. On intake on February 3, 2016, she was diagnosed with an underlying mood disorder and prescribed Seroquel, given lamotrizene, and instructed to continue with Zoloft. On re-evaluation on March 9, 2016, Plaintiff reported she was feeling better since her last visit. Nurse Practitioner Danielle Tabbi observed that her mood "drastically improved" with medication management. (R. at 454.) At a further follow-up with Jessica Mancuso, FNP on November 2, 2017, Plaintiff reported feeling worse, was not treating with a psychiatrist, although she reported that another doctor had encouraged it, and had developed a tremor which she noticed impacting her work decorating cakes. (R. at 621.) Plaintiff reported that Gabapentin, prescribed by her primary doctor, was helping somewhat with the tremor. (R. at 622.)

24.     Between in 2016 and 2017, Dr. Paul Updike treated Plaintiff and managed her medications for anxiety and addiction. On August 8, 2016, Dr. Updike assessed Plaintiff with anxiety, depression, and opiate dependence. (R. at 600-01.) He noted that Plaintiff's symptoms were worse since she had returned to the workforce. (R. at 600.) He started her on a low dose of benzodiazepines (Klonopin). At an appointment after this medication adjustment, Dr. Updike observed that Plaintiff had improved on this regimen. (R. at 596.) On December 29, 2016, Dr. Updike observed that Plaintiff was "doing very well," and had just bought a car. (R. at 583.) On June 1, 2017, her functional status was "very high." (R. at 576.) In October 2017, Plaintiff reported that her anxiety symptoms were controlled with the current regimen, although she had developed a problem with gambling. (R. at 560.)

25.    The record does not contain opinion evidence from any of these treating physicians, but overall their treatment records show general control of Plaintiff's mental health symptoms, and no significant treatment for her back problems. The record contains the opinions of two consultative examiners. At an internal medicine evaluation on March 21, 2016, Dr. Hongbiao Liu noted that Plaintiff cooked, cleaned, did laundry, took care of her hygiene, and appeared in no acute distress. (R. at 461.) Plaintiff had full flexion and extension in her cervical spine, and flexion and extension of 75 degrees in her lower lumbar spine. (R. at 462.) Dr. Liu noted Plaintiff's history of asthma. (R. at 460.) He opined that she would have a mild limitation for prolonged walking, bending, and kneeling, and that she should avoid heights and irritants. (R. at 463.)

26.    On the same day, Dr. Gina Zali performed a psychological examination.  (R. at 465-68.) Dr. Zali observed that Plaintiff had a coherent and goal-directed thought process with no evidence of delusions, and an anxious affect. (R. at 465.)  Dr. Zali opined that Plaintiff had no limitations in following directions and mild limitations in following a regular schedule, making appropriate decisions, and relating to others. (R. at 468.) She had moderate limitations in appropriately dealing with stress. (Id.) The record also contains the opinion of agency physician, Dr. A. Dipeolu, who opined, based on a review of the record, that Plaintiff's psychiatric impairments did not appear to more than minimally affect her daily functioning. (R. at 111.)

27.    The ALJ gave limited weight to the opinions of Drs. Liu and Zali because they were onetime examinations, and did not reflect Plaintiff's longitudinal status. The ALJ did, however, find them consistent with the medical record. In support of her RFC, the ALJ also cited other parts of the record that supported it, including: Plaintiff's activities of

daily living; the ongoing assessments of Dr. Updike that Plaintiff was doing "well", "stable," on her medications, and that her anxiety symptoms were controlled; Dr. Butt's statement that her lumbar spine x-rays "showed some degenerative changes which should not be the cause of her disability"; and x-rays showing no fracture or subluxation but some degenerative changes.

28.     Plaintiff's argument that the ALJ was not permitted to review the record as a whole is misplaced. In fact, it is the ALJ's job to assess the record as a whole, assign weight to the opinion evidence, and formulate an RFC.  See 20 C.F.R. § 404.1545(a)(3) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, consultative examinations, medical history, and statements from medical sources, family, friends, or other persons when assessing an applicant's residual functional capacity). This Court finds that the ALJ properly did so in this case.

29.     It is noteworthy that Plaintiff does not identify any ways in which the RFC the ALJ gave her is actually inconsistent with the record as a whole. Rather, she only argues that the lack of a medical opinion receiving more than partial weight created a "gap" in the record. But because the record contained sufficient evidence, in addition to the opinions of Drs. Liu and Zali, supporting the ALJ's determination, and because the ALJ weighed all of that evidence when making her residual functional capacity finding, there was no "gap" in the record and the ALJ did not rely on her own "lay opinion." Johnson, 669 F. App'x at 46–47. See also Matta, 508 F. App'x. at 56 (concluding that an ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make [a residual functional capacity] finding that was consistent with the record as a whole").

30.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      March 9, 2021
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge